1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VFS FINANCING, INC., | No.: CV 09-01163-DSF-RC |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| CHF EXPRESS, LLC, a California limited liability company, ROBERT FOWLER, an individual residing in California, and RONALD W. HERTEL, an individual residing in California, | |
| Defendants. | |

This matter was tried before this Court, sitting without a jury, on August 10, 2010. Michael A. Garabed of Reed Smith LLP appeared on behalf of Plaintiff VFS Financing, Inc. There was no appearance by any Defendant. The default of Defendant CHF Express, LLC ("CHF") had been entered on August 12, 2009. On Plaintiff's motion based on the unavailability of defense witnesses for cross-examination, the direct testimony of defense witnesses submitted by declaration was stricken.

Having heard the admissible evidence presented by the Plaintiff, and having considered the demeanor and credibility of the witnesses and all papers and exhibits presented by the Plaintiff for purposes of this trial, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# I.

# JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. This Court has personal jurisdiction over each of the Defendants.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c) because a substantial part of the relevant events or omissions giving rise to the claims occurred in this District.

## II.
## **FINDINGS OF FACT**

### **The Security Agreement And The Note**

4. On or about December 29, 2006, Banc of America Leasing and Capital, LLC ("BALC"), as lender and secured party, and CHF, as borrower and debtor, entered into a Loan and Aircraft Security Agreement (the "Security Agreement").

5. Pursuant to the Security Agreement, BALC loaned CHF the sum of $7,150,000.00 for the purchase of an aircraft for use in CHF's business operations.

6. The loan is further evidenced by a Promissory Note (the "Note"), which requires repayment of the loan in installments and which is incorporated into and secured pursuant to the Security Agreement.

7. As security for the loan, the Security Agreement granted BALC a senior security interest in the aircraft purchased by CHF with the proceeds of the loan. This collateral consisted of: one (1) 1999 Citation, Model 560XL aircraft, Serial Number 560-5021, FAA Registration Number N862CE, powered by two (2) Pratt & Whitney PW545A aircraft engines, Model ALF502L-2C, Serial Numbers PCE-DB0042 and PCE-DB0040, together with one (1) Honeywell RE-100 auxiliary power unit bearing manufacturer's Serial Number P-515 and the ancillary equipment stated on the Security Agreement (collectively, the "Aircraft").

## The Guaranties

8. On or about December 29, 2006, Defendant Robert Fowler ("Fowler") executed and delivered to BALC a Guaranty (the "Fowler Guaranty") in which he guarantied the obligations of CHF under the Note.

9. On or about December 29, 2006, Defendant Ronald Hertel ("Hertel") executed and delivered to BALC a Guaranty (the "Hertel Guaranty") in which he guarantied the obligations of CHF under the Note.

10. The Fowler Guaranty and the Hertel Guaranty are collectively referred toas the "Guaranties."

## Assignment to Plaintiff

11. Subsequent to making the loan evidenced by the Security Agreement, the Note, and the Guaranties, BALC assigned to Plaintiff the entirety of its interest in the Security Agreement, the Note, and the Guaranties.

12. Plaintiff, as successor-in-interest to BALC with respect to the Security Agreement, the Note, and the Guaranties, currently possesses the entirety of BALC's interests in the Security Agreement, the Note, and the Guaranties.

## Forbearance Agreement

13. On or about May 20, 2008, Plaintiff and Defendants entered into a Forbearance Agreement (the "Forbearance Agreement"), which, among other things, reaffirmed Defendants' obligations under the Security Agreement, the Note,

and the Guaranties.

14. The Security Agreement, the Note, and the Forbearance Agreement are referred to as the "Loan Documents."

## Default by CHF

15. CHF failed to make loan repayment installments due and owing to Plaintiff under the Loan Documents.

16. Plaintiff notified CHF of this default and made demand on CHF to immediately cure the payment default under the Loan Documents.

17. Despite demand, CHF failed and refused to pay the amount due and owing under the Loan Documents.

18. Subsequent to default, CHF surrendered the Aircraft to Plaintiff.

## Marketing Efforts

19. After the Aircraft was surrendered to Plaintiff, the Aircraft was marketed by Jeteffect, Inc. ("Jeteffect"), a private aircraft broker.

20. The Aircraft received Jeteffect's customary marketing efforts, which included professional photography of the aircraft interior and exterior, fabrication of a brochure showcasing the Aircraft, and photo advertising in major industry publications. Jeteffect also employed a direct mail marketing campaign by mailing color postcards and letters to potential purchasers.

21. Jeteffect also made the Aircraft available on its website and through the two major broker service electronic listings – AMSTAT & JETNET.

22. From 2008 through 2009, the private aircraft market for sellers deteriorated significantly. In the twelve months between January 2008 and January 2009, for example, the number of private aircraft available on the market that were the same make and model as the Aircraft doubled.

23. In addition to saturated inventory, the fair market value of the Aircraft was negatively affected due to its number of flight hours and because it lacked an Engine Maintenance Program, which was available on competing aircraft and carried significant value.

24. On or about September 18, 2009, Plaintiff's affiliate executed a lease with a third party relating to the Aircraft. Prior to that date, Jeteffect did not receive any formal written offers to purchase or lease the Aircraft.

25. The lease commenced on October 1, 2009 and if all payments are timely made, will result in net proceeds of $3,700,000.00 to Plaintiff.

**Damages**

26. Plaintiff incurred $494,307.43 in costs associated with the marketing of the Aircraft. Accordingly, if all payments are timely made, Plaintiff will receive a total of $3,205,692.57 in net proceeds relating to the lease.

27. When the net proceeds from the lease are subtracted from the outstanding balance due as of September 18, 2009 and per diem interest is added through

August 10, 2010, the aggregate payment default totals $4,386,295.30, excluding costs and attorneys' fees.

# III.
# CONCLUSIONS OF LAW

**A. Plaintiff Is Entitled To Judgment On Its Breach of Contract Claim Against CHF**

1. The Loan Documents are governed by New York law. Under New York law, the essential elements of a breach of contract claim are: (1) the existence of a contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of that contract; and (4) resulting damages. See JP Morgan Chase Bank, N.A. v. Rabel, 27 Misc.3d 656, 658, 894 N.Y.S.2d 857 (2010); Flomenbaum v. New York University, 71 A.D.3d 80, 91, 890 N.Y.S.2d 493 (2009).

2. The Loan Documents constitute a written contract between Plaintiff and CHF.

3. Plaintiff performed all of its obligations under the Loan Documents, including its obligation to dispose of the Aircraft in a commercially reasonable manner. See N.Y. U.C.C. § 9-627(b) ("A disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition").

4. CHF breached the Loan Documents by failing to make loan repayment installments due and owing under the Loan Documents and failing to cure the payment deficiency existing after the execution of the lease in September 2009.

5. As a result of CHF's breaches, Plaintiff has sustained damages in the amount of $4,386,295.30 – the amount of the outstanding unpaid balance of the loan (excluding costs and attorneys' fees) as of August 10, 2010.

6. Accordingly, Plaintiff is entitled to a judgment in its favor and against CHF in the amount of $4,386,295.30, excluding costs and attorneys' fees.

**B.   Plaintiff Is Entitled To Judgment On Its Breach Of Contract Claims Against Fowler and Hertel Relating To Their Respective Guaranties**

7. In order to recover under the terms of a guaranty under New York law, a plaintiff must provide proof of: (1) the underlying obligation; (2) the guaranty; and (3) failure by the guarantor to make payment in accordance with its terms. See Tucker Leasing Capital Corp. v. Marin Medical Management, Inc., 833 F.Supp. 948, 957 (E.D.N.Y. 1993); Key Bank of Long Island v. Burns, 162 A.D.2d 501, 556 N.Y.S.2d 829 (1990).

8. Fowler and Hertel each executed a valid guaranty of CHF's obligations under the Loan Documents.

9. Pursuant to the terms of the Guaranties, Fowler and Hertel's obligations to Plaintiff became immediately due and owing as a result of CHF's breaches of its obligations under the Loan Documents.

10. Fowler and Hertel have each failed to satisfy their obligations under their respective guaranties.

11. As a result, Plaintiff has sustained damages in the amount of $4,386,295.30 – the amount of the outstanding unpaid balance of the loan (excluding costs and attorneys' fees) as of August 10, 2010.

12. Accordingly, Plaintiff is entitled to a judgment in its favor and against Fowler and Hertel, jointly and severally, in the amount of $4,386,295.30, excluding costs and attorneys' fees.

Dated: August 12, 2010

_____
Hon. Dale S. Fischer
United States District Judge